**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BANXCORP,

Plaintiff,

v.

LENDINGTREE LLC, DOW JONES & COMPANY, INC., THE NEW YORK TIMES COMPNY, CNBC, INC., CABLE NEWS NETWORK, INC., MSNBC INTERACTIVE NEWS, LLC, FOX NEWS NETWORK, LLC, AOL INC., and MOVE, INC.,

Defendants.

Civil Action No. 10-2467 (SDW)(MCA)

**OPINION**

February 7, 2011

**WIGENTON**, District Judge.

Before the Court are Defendants, Dow Jones & Company, Inc., The New York Times Company, CNBC Inc., Cable News Network, Inc., MSNBC Interactive News, LLC, Fox News Network, LLC, AOL Inc., Move, Inc., (collectively "Media Defendants") and LendingTree LLC's ("LendingTree") (collectively "Defendants") Motions to Dismiss ("Motions") Plaintiff, BanxCorp's ("BanxCorp" or "Plaintiff") First Amended Complaint ("FAC") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction under 15 U.S.C. §§ 1 and 26, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. §§ 15 and 22. The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court denies Defendant, LendingTree Motion and grants the Motion of the Media Defendants.

**FACTUAL AND PROCEDURAL HISTORY**

BanxCorp is a provider of bank rate tables listing interest rates from financial institutions. LendingTree is a mortgage lead aggregator that provides information on "mortgages and refinance loans, home equity loans/lines of credit, auto loans, personal loans, credit cards and high-yield savings accounts online." (Pl.'s Ex. E at 2.) The Media Defendants operate websites that display online bank rate tables "and related hyperlinks." (Media Defs.' Br. 8.) Bankrate, Inc.,[1] ("Bankrate") aggregates and supplies the bank rate listings for both LendingTree and the Media Defendants. (Pl.'s Ex. E at 2.)

BanxCorp filed a two count complaint against Defendants alleging: (1) illegal restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and (2) conspiracy in restraint of trade in violation of § 56:9-3 of the New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-1 et seq. (West 2001) (First Am. Compl. ¶¶ 109-119) (hereinafter "Am. Compl."). The specific anti-competitive practices asserted in the complaint include: "*per se* horizontal market division and customer allocation agreements, and *per se* horizontal price fixing agreements with one or more competitors." (Id. at ¶¶ 110, 116.)

Defendants subsequently filed these Motions pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. LendingTree asserts that Plaintiff lacks antitrust standing and has failed to adequately plead: (1) a horizontal conspiracy in restraint of trade, and (2) a plausible relevant market. (LendingTree Br. 6, 14, 21.) Similarly, the Media Defendants maintain that BanxCorp lacks standing and has failed to state a claim against any of them because: (1) it has not alleged any facts particular to the Media Defendants, and (2) their

[1] Bankrate, another provider of various financial information and advice, including bank rate tables listing interest rates from financial institutions, (Pl.'s Ex. B at 2), is a Defendant in a related action filed by Plaintiff. BanxCorp v. Bankrate, Inc., Civ. No. 07-3398 (SDW)(MCA).

vertical agreements with Bankrate cannot be considered *per se* illegal. (Media Defs.' Br. 12, 25, 32.)

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief."). In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."' Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holding Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) ("Twombly"). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556–57) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  Id.

Although the Third Circuit has instructed that antitrust complaints should be liberally construed, Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988) (quoting Knuth v. Erie-Crawford Diary Coop, 395 F.2d 420, 423 (3d Cir. 1968), cert. denied, 410 U.S. 913 (1973)), "they [are not] exempt from the federal rules."  Commonwealth of Pa. ex. rel. Zimmerman, 836 F.2d at 179 (quoting Sims v. Mack Truck Corp., 488 F.Supp. 592, 608 (E.D. Pa. 1980)).  According to the Supreme Court in Twombly "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted).  Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id.  The Court then held that an antitrust complaint must plead "enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  Id. at 556.  The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a

complaint with enough factual matter (taken as a whole) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

## DISCUSSION

LendingTree moves to dismiss BanxCorp's claims for violation of § 1 of the Sherman Act and NJ. Stat. Ann § 56:9-3, the New Jersey Antitrust Act. LendingTree argues that Plaintiff lacks standing to bring this antitrust suit. Additionally, LendingTree asserts that Plaintiff has failed to allege sufficient facts to support its horizontal conspiracy claims and that BanxCorp relies on a relevant market definition that is facially implausible and contradictory.

Similarly, the Media Defendants who have also moved to dismiss BanxCorp's claims maintain that their motion should be granted because Plaintiff lacks standing. Furthermore, they argue that Plaintiff's allegations are vague and conclusory because there is no allegation made against any specific Media Defendant. Finally, the Media Defendants assert that their agreements with Bankrate cannot be *per se* illegal because they are vertical in nature.

On the other hand, BanxCorp argues Defendants' Motions should not be granted because it has standing to bring this action and it has adequately stated a claim under § 1 of the Sherman Act.

### I. LendingTree's Motion to Dismiss[2]

#### A. Standing

Although "[a]ntitrust injury is a necessary . . . condition of antitrust standing," Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 182 (3d Cir. 1997), its existence "is not typically resolved through motions to dismiss." Schuylkill Energy Res. v. Pa. Power & Light

[2] Defendants' Motions barely address Plaintiff's New Jersey Antitrust Act claims. Consequently, although this Court appreciates that Defendants' antitrust standing and relevant market arguments are necessary pleading requirements for any antitrust claim, it will not analyze the sufficiency of BanxCorp's pleadings under the New Jersey Antitrust Act.

Co., 113 F.3d 405, 417 (3d Cir. 1997) (citing Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 876 (3d Cir. 1995)). However, "the district court should first address the issue of whether the plaintiff suffered antitrust injury. If the antitrust injury is not found, further inquiry is unnecessary." City of Pittsburg v. W. Penn Power Co., 147 F.3d 256, 265 (3d Cir. 1998). "The focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." Associated Gen. Contractors of Ca. v. Ca. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983). A court must consider "doctrines such as foreseeability and proximate cause, directness of injury, certainty of damages and privity of contract" in its determination of whether a plaintiff is the "proper party." Id. at 532-33. Antitrust injury is the type of injury "the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); see also Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327-28 (3d Cir. 1992) (antitrust standing requires a plaintiff to show both: 1) harm of the type the antitrust laws were intended to prevent, and 2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful.)

LendingTree maintains that Plaintiff's complaint should be dismissed because it has "neither alleged nor suffered antitrust injury as a result of Defendants' purported conspiracy." (LendingTree Br. 8.) This Court disagrees. BanxCorp has specifically alleged that "[a]bsent Defendants' anticompetitive scheme to restrain trade, [] [it] could have increased its size,

profitability, market share and market value . . . ." (Am. Compl. ¶ 107.) Moreover, Plaintiff maintains that its "market share and consequential revenues have declined at a rate of approximately 25% annually, year after year, for at least four years." (Id. at ¶ 102.) Furthermore, Plaintiff contends that Defendants' conduct has "caused and continue to cause extensive damage to the competitive marketplace, to customers—the financial service providers (or direct purchasers), and ultimately to consumers . . . ." (Id. at ¶ 20.) Therefore, it has asserted anticompetitive injury to itself, other competitors, and consumers.

LendingTree, however, argues that Plaintiff lacks standing because it is Defendants' competitor. (LendingTree Br. 8.) This argument lacks merit. As the Third Circuit has noted "one of the essential tenets of antitrust standing is that a plaintiff must generally be a 'competitor or customer' of the defendant." Warnock v. NFL, 154 Fed. Appx. 291, 294 (3d Cir. 2005), cert. denied, 547 U.S. 1021 (2006) (finding that plaintiff did not have antitrust standing because he was neither a competitor nor a customer); see also W. Penn Allegheny Health Sys. v. UMPC, 627 F.3d 85, 102 (3d Cir. 2010) ("[a]s a general matter, the class of defendants capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market"); Carpet Grp. Int'l v. Oriental Importers Ass'n, 227 F.3d 62, 77 (3d Cir. 2000) ("generally only competitors and consumers will suffer antitrust injury"). Therefore, contrary to LendingTree's contention, BanxCorp's status as a competitor does not preclude it from having standing. If anything, its status bolsters its claim that it has antitrust standing.[3]

**B. Illegal Restraint of Trade under § 1 of the Sherman Act**

Plaintiff alleges that Defendants illegally restrained trade in violation of § 1 of the Sherman Act by "engaging in *per se* horizontal market division and customer allocation

[3] The Media Defendants also raise standing arguments similar to those asserted by LendingTree. Therefore, this conclusion also applies to the Media Defendants' standing arguments.

agreements, and *per se* horizontal price fixing agreements with one or more competitors." (Am. Compl. ¶ 110.) Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." But "[s]ince virtually all business agreements restrain trade to some extent, § 1 of the Sherman Act has been construed to make illegal only those contracts that constitute unreasonable restraints of trade." Yeager's Fuel v. Pa. Power & Light Co., 953 F. Supp. 617, 653 (D.N.J. 1997) (quoting Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996)) (internal quotations omitted). To establish a claim under § 1, Plaintiff must show that: "(1) the defendants contracted, combined or conspired among each other; (2) the combination or conspiracy produced anti-competitive effects within the relevant product and geographic markets; (3) the objects of the conduct pursuant to that contract or conspiracy were illegal; and (4) the plaintiffs were injured as a proximate result of that conspiracy." Ideal Dairy Farms v. John Labbatt, Ltd., 90 F.3d 737, 748 n.5 (3d Cir. 1996).

BanxCorp alleges that "Defendants entered into a conspiracy in restraint of trade and formed a cartel with their competitor Bankrate[,] Inc." (Am. Compl. ¶14.) Additionally, in BanxCorp v. Bankrate, the related action, this Court concluded that "Plaintiff has presented enough factual matter to support the contention that an agreement was made [with LendingTree] and that discovery may reveal evidence of an illegal agreement." 2008 U.S. Dist. LEXIS 51756, at *22 (D.N.J. July 7, 2008). According to the Court,

> BanxCorp claims that Bankrate and LendingTree entered into a "quid pro quo" agreement to "share, allocate and divide markets, products, customers and anticompetitive information." Particularly, it alleges that Bankrate agreed to "wind down" its mortgage lead aggregator, FastFind ("FastFind" or "BankrateSelect.com"), while allocating its mortgage leads exclusively to LendingTree. In exchange, LendingTree allegedly agreed to exclusively allocate its high-yield savings account

> market place consisting of deposit bank rates to Bankrate. Essentially, "all traffic and clicks" for such products on LendingTree's websites were "passed exclusively" to Bankrate.

Id. at * 20 (internal citations omitted). Consequently, this Court found that

> BanxCorp provides sufficient, if not, detailed, factual allegations regarding the LendingTree agreement. It cites and quotes from a series of publications and announcements from Bankrate itself, describing the LendingTree mortgage lead aggregation agreement and the high-yield savings account allocation. In alleging a "quid pro quo" relationship between the two partnerships, BanxCorp carefully notes the close proximity in time of each release. It further clearly details the specifics of what each party to the alleged illicit agreement received.

Id. at * 21-22 (internal citations omitted). Additionally, the complaint makes a specific reference to this Court's determination that BanxCorp has adequately pleaded an alleged conspiracy between Bankrate and LendingTree. (Am. Compl. ¶ 88 n.9.) Therefore, LendingTree has no basis for contending that BanxCorp has failed to make specific allegations regarding the alleged horizontal conspiracy. Further, Plaintiff's allegations satisfy the pleading standard because they "provide . . . [LendingTree] with sufficient notice of the alleged actions that they will need to defend in this matter." In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d 303, 311 (D.N.J. 2004); see also W. Penn Allegheny Health Sys., 627 F.3d at 98 (noting Twombly "expressly rejected the notion that a heightened pleading standard applies in antitrust cases and Iqbal made clear that Rule 8's pleading standard applies with the same level of rigor in all civil actions.") (internal quotations and citations omitted).

**1. Horizontal Price-Fixing Agreement**

LendingTree asserts that Plaintiff's allegations, at best, describe a "dual distribution" relationship. (LendingTree Br. 18.) The Court disagrees. "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those

imposed by agreement between firms at different levels of distribution as vertical restraints." Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 730 (1988). "To allege a horizontal price-fixing agreement, a plaintiff must, at minimum, show an agreement among competitors." BanxCorp v. Bankrate, 2009 U.S. Dist. LEXIS 84151, at *9-10 (D.N.J. Sept. 14, 2009) (citing Texaco Inc., v. Dagher, 547 U.S. 1, 6 (2006)). Here, Plaintiff is alleging that Bankrate and LendingTree are competitors because LendingTree is also a "mortgage lead aggregator." BanxCorp specifically alleges that Bankrate "repeatedly describes [LendingTree] . . . and other members of the CARTEL as its partners and competitors in its periodic S.E.C. filings." (Am. Compl. ¶ 76; see also Pl.'s Ex. D at 3, 5, 6, 8, 9.) Furthermore, BanxCorp points to Bankrate's Second Quarter 2007 Earnings call where Bankrate acknowledges that "[s]ome of the guys that are our partners, they're also competitors." (Am. Compl. ¶ 76.) Therefore, Plaintiff has adequately pleaded a horizontal price-fixing agreement between Bankrate and LendingTree.

**2. The Relevant Market Definition**

"[I]n most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997) (citing Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 482 (1992)). Nonetheless, this need for a factual inquiry is not "a *per se* prohibition against dismissal of antitrust claims for failure to plead a relevant market . . . ." Queen City Pizza, Inc., 124 F.3d at 436. The Third Circuit has stressed that Plaintiff bears the burden of defining the relevant market. Id. (citing Pastore v. Bell Telephone Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994)). According to the Third Circuit, "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of

demand between the product itself and the substitutes for it." Id. (quoting Brown Shoe Co. v. U.S., 370 U.S. 294, 325 (1962)) (internal quotations omitted). Additionally, the Court stated that

> [w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

Id.

Interchangeability is defined as one product being "roughly equivalent to another for the use to which it is put; while there might be some degree of preference for the one over the other, either would work effectively." Allen-Myland, Inc. v. Int'l Bus. Machine Corp., 33 F.3d 194, 206 (3d Cir. 1994). "When assessing reasonable interchangeability, factors to be considered include price, use, and qualities." Queen City Pizza, 124 F.3d at 437 (quoting Tunis Bros. Co., Inc. v. Ford Motor Co., 952 F.2d 715, 722 (3d Cir. 1991)) (internal quotations omitted). Moreover, "[r]easonable interchangeability is also indicated by crosselasticity of demand between the product itself and substitutes for it." Queen City Pizza, 124 F.3d at 437 (quoting Brown Shoe Co., 370 U.S. at 325) (internal quotations omitted). Consequently, "the rise in the price of a good within a relevant product market would tend to create a great demand for other like goods in that market." Tunis Bros. Co., 952 F.2d at 722. On the other hand, "[c]ross elasticity of demand is a measure of the substitutability of products from the point of view of the buyers." Queen City Pizza, 124 F.3d at 438 n.6 (quoting E. Thomas Sullivan & Jeffrey L. Harrison, Understanding Antitrust and its Economic Implications 217 (1994)) (internal quotations omitted).

LendingTree contends that Plaintiff has not properly alleged a plausible relevant market, and consequently, failed to state a claim for relief. (LendingTree Br. 21.) According to

LendingTree, BanxCorp's relevant market definition is "inconsistent and contradictory," (LendingTree's Br. 22), and that its proposed relevant geographic market is conclusory. (Id. at 26.) It is noteworthy that BanxCorp's alleged relevant market definition and proposed relevant geographic market in this case is identical to that alleged in the related action, BanxCorp v. Bankrate, Inc., Civ. No. 07-3998 (SDW)(MCA). This Court has already addressed the adequacy of BanxCorp's relevant market definition in the related action, and found on July 13, 2010, that Plaintiff has adequately pleaded the relevant market. See id., Docket Entry Nos. 121, and 126. Consequently, this Court will not re-address the issue.

## II. The Media Defendants' Motion to Dismiss

### A. The Sufficiency of BanxCorp's Pleadings

The Media Defendants maintain that Plaintiff has failed to state a claim upon which relief can be granted because it has failed to allege any facts against any particular Media Defendant. (Media Defs.' Br. 15.) This Court agrees. While Twombly does not "require heightened fact pleading of specifics," the plaintiff must come forward with "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Although BanxCorp is not required to assert "detailed factual allegations" in its complaint, id. at 555, it has an obligation to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is insufficient. Id. (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. 1937, 1949. Put differently, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations omitted).

In this case, BanxCorp has failed to meet this pleading requirement. As the Media Defendants rightly assert, Plaintiff has not alleged any facts against any particular Media Defendant. The complaint is devoid of any facts demonstrating the plausibility that any particular Media Defendant conspired with Bankrate in violation of antitrust laws. Plaintiff simply substitutes the Media Defendants with the general terms "defendants" and "cartel." Plaintiff's use of the "global term" defendants [and cartel] to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient" under Twombly and its progeny. In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d at 312 (internal quotations omitted). In comparison with Plaintiff's allegations against LeindingTree, its allegations against the Media Defendants are threadbare, at best. In order to satisfy the pleading requirement Plaintiff had to "allege that 'each individual defendant joined the conspiracy and played some role in it' because, 'at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'" Id. (quoting Jung v. Assoc. of Am. Med. Colls., 300 F. Supp. 2d 119, 163-64 (D.D.C. 2004)).[4] Consequently, this Court finds that Plaintiff has failed to adequately plead a claim against the Media Defendants.

## CONCLUSION

For the reasons stated above, LendingTree's Motion to Dismiss the Complaint is DENIED, and the Media Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

[4] Because this Court finds that BanxCorp has failed to sufficiently plead its claims against the Media Defendants, it will not address the Media Defendants' other arguments.

cc: Madeline Cox Arleo, U.S.M.J.